**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **GRACEANN A. PISANO,** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | **3:22-cv-00288 (___)** |
| | : | |
| **vs.** | : | |
| | : | |
| **COOPERSURGICAL, INC.,** | : | |
| | : | |
| **Defendant.** | : | **February 22, 2022** |
| | : | |

## COMPLAINT

### I.     INTRODUCTION

1.     CooperSurgical is a company that serves the health care needs of women. Their corporate value statements about who they are as a company include that they are honest, fair, genuine, transparent and welcome different perspectives and philosophies. Their former Corporate Counsel and plaintiff in this case, Graceann Pisano, was terminated from her job in retaliation for acting in accordance with these values, opposing sexually discriminatory, bullying and retaliatory behavior by one of CooperSurgical's highly placed executives. This lawsuit is the result of that retaliation.

2.     Plaintiff claims a jury trial on all claims so triable.

### II.     JURISDICTION

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C. section 1331.

4.     Venue is proper in this District under 28 U.S.C. section 1391 (b) (2), because a substantial part of the events or omissions giving rise to the claims occurred here.

## III.    THE PARTIES

5.      Plaintiff, Graceann A. Pisano (hereafter "Pisano") is a citizen of the United States and a resident of Hamden, Connecticut.

6.      Defendant, CooperSurgical Inc. (hereafter "Cooper") is a corporation with headquarters at 75 Corporate Drive, Trumbull, CT 06611.

7.      Cooper employs more than 20 employees in Connecticut. At all relevant times, Cooper was Pisano's employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991 and the Connecticut Fair Employment Practices Act (CFEPA).

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff Pisano filed a timely complaint with the Connecticut Commission on Human Rights and Opportunities and with the Equal Employment Opportunity Commission.

9.      Plaintiff Pisano received a Release of Jurisdiction from the CHRO dated December 9, 2021 and a Notice of Suit Rights from the EEOC dated January 26, 2022. She has filed this complaint within 90 days of her receipt of the Release of Jurisdiction and Notice of Suit Rights.

## V.    FACTUAL HISTORY

10.     On or about January 16, 2017, Pisano began working with Cooper in an executive legal position of Corporate Counsel. She reported to Dr. Robert Auerbach, Executive Vice President, Chief Strategy & Medical Officer. She continued to report to Dr. Auerbach after he became the company President in April 2018.

11.     In her first formal performance review, signed by Dr. Auerbach and herself on November 5, 2018, Dr. Auerbach rated her either "consistently excellent" or "fully meets standards." In the narrative portion of the review, he stated: "Graceann has been a great contributor

to CSI since she joined. Well-respected, strong research on topics that are new, clear thinker, excellent communicator... And good human being.... I have definitely seen evolution as a business contributor with a legal background...just what we need! I have received multiple positive comments from members of the LT as well as others in the organization regarding Graceann. Universally they highlight her listening ability and her approach of trying to achieve business objectives while protecting the company's interests."

12.     In her next performance review covering work from November 1, 2018 to October 31, 2019, when she was again evaluated by Dr. Auerbach he gave her an overall rating of "Exceeds Expectations." Among other remarks he stated: "I trust you and value your counsel…on legal matters and much more surrounding the business…. I sincerely respect your counsel and desire to always do the right thing."

13.     In addition to her performance review, Cooper recognized her 2019 performance by giving her a significant bonus and equity grant of restricted stock units.

14.     Mr. Auerbach retired as CEO in July 2020 but remained with Cooper as a consultant. He continued to praise her work. In a letter he sent in January 2021 he stated: "Graceann's business acumen, ability to collaborate and provide pragmatic advice to her business partners combined with her work ethic, can-do attitude, and engaging personality made her a valuable and effective in-house counsel and a voice that I relied on routinely."

15.     Some other top executives at Cooper, however, often were hostile and discriminatory toward women. Al White, who became CEO of the parent corporation in January 2018 was insulting and hostile toward Pisano in a public dinner in July 2019. He and the COO acted as bullies and were highly inappropriate in a meeting in March 2020. Two other women,

who heard the inappropriate language, were visibly upset to the extent that they were concerned about why they joined the company.

16.    Mark Valentine was President of Global Medical Devices while Pisano was employed with Cooper. Mr. Valentine exhibited a pattern of sexist, gender-based discriminatory actions against women that included retaliation against them for complaining or raising compliance issues. As one example, Cheryl Bogardus was Vice President of Marketing in charge of all United States marketing who reported to Cooper's President until about April 2018. As a result of a reorganization, she would have been required to report to Mr. Valentine. Being aware of his behavior toward women, including his behavior toward her, she refused to work for Valentine. She was unfairly terminated later in 2018.

17.    Another example is Barbara Wills who was a product director in Mr. Valentine's group. She raised certain issues and when doing so specifically stated she was concerned about retaliation. Mr. Valentine was informed of her concerns, and after an investigation was completed Ms. Wills became subjected to alleged performance concerns that had never been raised previously. Later Valentine's group decided falsely to claim that her position was eliminated.

18.    Other women complained to Pisano and to the Human Resources department about Mr. Valentine's behavior toward them, his lack of support and/or his bullying, retaliatory and discriminatory actions.

19.    Upon information and belief, Pisano's compensation was lower than comparable male employees. She discovered evidence when she was taking part in hiring a Compliance Director. She found that many candidates were compensated at higher levels than she was, for comparable or lesser work and raised her concerns to Human Resources Vice President Kerry Tehan. She again raised her salary concerns to Ms. Tehan but also to General Counsel Mark Drury

4

in September 2020, having a good faith belief that Clay Arnold, who had a lower and less complex role than she did, received substantially higher compensation.

20.    In addition, Pisano had discussions with employees in senior leadership, in July and August 2020, about Mr. Valentine's inappropriate behavior. On August 18 she spoke with Mr. Auerbach's successor, Holly Sheffield, in a discussion that included complaints about Mr. Valentine's recent inappropriate behavior toward her and her concern that he was treating others, particularly women, poorly. Shortly thereafter Valentine gave her a quick and insincere apology for his inappropriate behavior.

21.    On October 23, Pisano had lengthy conversations, twice with Ms. Tehan and once with Ms. Sheffield, specifically concerning how Mr. Valentine had been harassing her, how he was a bully and how his sexist and retaliatory behavior could affect Cooper adversely. She advised that he engaged in similar conduct with other female employees but not with male employees. Tehan said she needed to begin an investigation.

22.    On November 2, with no investigation having yet begun, she raised these concerns to defendant's General Counsel, Mark Drury. Mr. Drury told her he agreed that Mr. Valentine's behavior was "absolutely inappropriate," but he then advised that "there are bigger dicks in the company" and that Pisano "need[ed] a thicker skin." He advised that she should not upset or run afoul of Mr. Valentine because Valentine brings in a lot of revenue. He said senior leadership would not take any steps to prevent Valentine's conduct from continuing and that Pisano was the one who needed "to make it work."

23.    On November 3, Tehan advised Pisano that the company did not and would not investigate her complaint. Without any investigation, she advised that Valentine's conduct did not amount to their definition of "bullying" and Pisano was being too dramatic.

24.     On November 4, Pisano met with Valentine. That meeting seemed to be reasonable so she thanked him for it by a later email.

25.     On November 5, Attorney Drury called Pisano to tell her that Cooper was terminating her employment. The reason he gave was that Cooper was moving in a different direction and needed a business partner who could support the business.

26.     The reason given was false and pretextual. Cooper terminated Pisano's employment in violation of the Connecticut Fair Employment Practices Act (CFEPA) and Title VII of the Civil Rights Act of 1964 (Title VII). Her gender was a motivating factor in her wage differential, harassment and discrimination in terms and conditions of employment, termination and retaliation against her for her complaints.

27.     As a result of the harassment, discrimination, termination and retaliation against her as pled herein, she has suffered past and future economic losses including lost compensation and fringe benefits, lost retirement income plan benefits, lost RSUs, and past and probable future non-economic losses including to her reputation, causing loss of enjoyment of life's activities and other emotional pain and suffering.

### FIRST COUNT (Title VII Discrimination, Including Harassment and Termination)

28.     Pisano realleges paragraphs 1 through 27 the same as if fully set forth in this First Count.

29.     Defendant's actions and omissions as pled violated Title VII, causing damages.

### SECOND COUNT (CFEPA Discrimination, Including Harassment and Termination)

30.     Pisano realleges paragraphs 1 through 27 the same as if fully set forth in this Second Count.

31.     Defendant's actions and omissions as pled violated the CFEPA, causing damages.

### THIRD COUNT (Retaliation under Title VII)

32.     Pisano realleges paragraphs 1 through 27 the same as if fully set forth in this Third Count.

33.     Pisano's good faith complaints were protected conduct under Title VII.

34.     Defendant retaliated against her for her protected conduct, violating Title VII, causing damages.

### FOURTH COUNT (Retaliation under CFEPA)

35.     Pisano realleges paragraphs 1 through 27 the same as if fully set forth in this Fourth Count.

36.     Pisano's good faith complaints were protected conduct under the CFEPA.

37.     Defendant retaliated against her for her protected conduct, violating the CFEPA, causing damages.

### FIFTH COUNT (Punitive Damages under Title VII)

38.     Pisano realleges paragraphs 1 through 34 the same as if fully set forth in this Fifth Count.

39.     Defendant engaged in its discriminatory and/or retaliatory practices with malice or reckless indifference to Pisano's statutory rights protected under Title VII.

40.     Due to defendant's malice or reckless indifference, Pisano is entitled to punitive damages.

### SIXTH COUNT (Punitive Damages under CFEPA)

41.     Pisano realleges paragraphs 1 through 39 the same as if fully set forth in this Sixth Count.

42.     Defendant engaged in its discriminatory and/or retaliatory practices with malice or reckless indifference to Pisano's statutory rights protected under the CFEPA.

43.     Due to defendant's malice or reckless indifference, Pisano is entitled to punitive damages.

\* \* \*

**WHEREFORE**, the plaintiff requests that this Court:

1. Assume jurisdiction over this Complaint;

2. Award all past and future economic losses to plaintiff, including the present value of her future pension losses;

3. Award attorney's fees, interest and costs;

4. Award all past and future non-economic damages;

5. Award punitive damages under the Fifth and Sixth Counts;

6. Grant such further relief as may be just and equitable.

> **THE PLAINTIFF,**
> **GRACEANN A. PISANO**
>
> By:  /s/ *Joseph D. Garrison*
>
> Joseph D. Garrison *(ct04132)*
> **GARRISON, LEVIN-EPSTEIN,**
>    **FITZGERALD & PIRROTTI, PC**
> 405 Orange Street
> New Haven, CT   06511
> Tel.: (203) 777-4425
> Fax: (203) 776-3965
> E-mail:  jgarrison@garrisonlaw.com